State of Iowa asked this court to undertake a de novo review of the petitioner's single claim for elite, and that is whether the Iowa Court of Appeals on a regionally applied Strickland v. Washington, when that court held, the defense counsel made a reasonable strategic decision to forgo a mistrial motion and to allow the jury to continue deliberating with an alternate juror. First, I assume you mean a de novo review applying Ed Burr? That's correct, Your Honor. A de novo review of the question presented to the federal district. A deferential de novo review. That's correct, Your Honor. So not a deferential of the district court. That's correct. No reply brief, I notice? Correct, Your Honor. And I was not counsel at the time the cases were briefed. My colleague has since retired, so I can't speak to why that would happen or not. But first, the state submits that the state court reasonably determined that counsel made a reasonable strategic decision. And of course, there's a presumption that counsel's actions might be considered sound trial strategy. How can it be a reasonable strategic decision if it's not an informed strategic decision? I think the answer to that, Your Honor, is that Strickland permits counsel to make a reasonable decision that makes particular or further investigations unnecessary. And I believe that's what happened here. Counsel... Well, how can you make a strategic decision if you didn't know that the law required mistrial? And that's another question I have preliminarily, is did the law just authorize mistrial or did it mandate a mistrial? I was unclear on that. I think the law is unclear on that. I think the Iowa rules, even to this day, are unclear. Of course, on direct appeal, the Iowa Court of Appeals opined that Rule 2.15 sub... Or 2.18 sub 15 would mandate a mistrial. But I'm not sure that's clear. The rule by its terms only speaks of juror substitution before the jury retires. It doesn't speak about what would happen afterwards. And so then it certainly doesn't say what the remedy would be. Well, unclear. Let's be specific. Was that dicta or not? That was dicta, Your Honor. And why was... Was that argued by the district court? Why didn't the district court recognize it was dicta? I don't have an answer for that, Your Honor. And actually, in a subsequent case... Well, did you waive that point? Fail to preserve it? No. Well, our... It seems to me that's obvious and yet we've got a 70-page opinion preserved. Yes, and our district court brief did mention that that was dicta. And there's actually a subsequent Iowa Court of Appeals case, the Estabrook case, which is cited in our brief from 2001, which says that counsel could allow substitution of an alternate juror during juror deliberations. No, could allow. That's a different issue. The issue we're dealing with is if it's requested, is it mandatory? Right. And I think that question is open as well. I think there's... That's the only one that matters. Yeah, I was going even further, though. Is it mandatory under any circumstances? I mean, if there is a juror misconduct and you have to dismiss the juror, is it always a mistrial? So there's no discretion with the trial judge or anybody else? I think the trial judge usually has discretion. And then I think it's an open question during juror deliberations whether the trial judge can essentially, over defense counsel's objection, say, no, we're going to substitute an alternate juror. That question just hasn't been answered under Iowa law. Well, surely the trial judge can't do that. There's an objection to race, surely, that the trial court has to honor it. Under Iowa law, that question hasn't been addressed. Okay. I'd sure like to see the... Is the text of the statute in the briefs someplace? I believe it is, Your Honor. And I don't have it here with me. I'll look for it. Okay. I apologize for that. But to double back to your question about how a decision can be strategic if it's not informed by the law, I think in this case, because of how the circumstances of the trial developed, counsel made a strategic decision that he didn't want a mistrial. And so I think it didn't matter if he would have went and researched the Iowa rule. Even if he would have determined that the Iowa rule provided for an automatic mistrial, he still would have not asked for it. That was a question that was not put to him at the evidentiary hearing, though. I mean, he wasn't confronted with this statute at the evidentiary hearing. All he talked about was, well, we really didn't want to do a mistrial because we thought we had an advantage in the case. That's correct. But he was not asked about, well, what about given the statute that mistrial is mandatory, if you would have known that, would your opinion still be the same? And we don't have that in the record, do we? We do not have that. And I think that in years to the detriment of the petitioner. And don't you need that? I don't believe the state needs that. I think to prove his case, to satisfy his burden under AEDPA and under Strickland, the petitioner would have to show that. And I think a related point is that Strickland doesn't look at counsel's subjective state of mind, so what he knew or didn't knew. Strickland looks at the objective circumstances of the case. And so as the Wright versus Nix case from this court suggests, it's the wrong question, quote, unquote, to ask what counsel thought the law was. The question is whether a fully informed, reasonably competent attorney could have decided that he didn't need to move for a mistrial in these circumstances. And I think under the facts of this case, that's true. And that's because defense counsel, as he testified, he didn't want a mistrial because he wanted this jury to decide the case. Because this jury is the jury that saw the really extraordinary rebuke of the prosecutor by the district court. And then this jury was also, as the Iowa Court of Appeals later described it, given an extraordinarily stern instruction. Of course, you argue that in the face of him having moved for a mistrial. I do, Your Honor, and I don't purport to defend the prosecutor's conduct. But it cries out for an explanation. I mean, I can imagine what an explanation, if you're right about his thinking, I can imagine an explanation for why he moved for the closing argument mistrial. But there's certainly tension between what you're arguing here must have been his mindset. There is tension, Your Honor. And I think that explanation that it cries out for is that rebuke by the district court judge. And if we go and look at the rebuke, it really was extraordinary. Outside the presence of the jury, the judge really gets after the prosecutor. Now, the rebuke came after the mistrial motion? Correct. And did counsel acknowledge that the rebuke was satisfactory or reassert the mistrial motion? After that rebuke, neither defense counsel, both very experienced defense counsel, never again requested a mistrial. No, I mean, immediately after the rebuke, was there any dialogue about whether it was curative in defense counsel's mind? At that time, no. Well, if you wanted to preserve it, if you didn't think the rebuke was adequate and wanted to preserve that, that was the time to speak up, right? That's correct. To re-up your motion for a mistrial, in other words. Yeah. They did need to do that if they thought that the instruction wasn't satisfactory, and they did not do that. So tacitly left with their idea that they thought it was. And really then explicitly in the post-conviction proceedings, they say because of that rebuke. They gained an advantage. They gained a tactical advantage. They thought this was their best opportunity for a favorable verdict. And I think looking at the strength of the state's case and really the weakness of their self-defense theory, I think that was a reasonable strategic decision for counsel to make. And I guess if I could, I should probably turn to the prejudice issue. And I think the starting point with the prejudice analysis. Did nobody put the rule in their addendums? I don't believe it's in either addendum, Your Honor. I don't know what you folks think your audience does up here, but if there's one useful thing you could have put in the addendum in either briefs, it would have been the rule we're talking about. I thought it was somewhere quoted. Okay. I think page 27. An alternate juror shall replace any juror who becomes unable to act or is disqualified before the jury retires, and if not so needed, shall then be discharged. Is that it? That's correct. Bottom of 27. Which 27? Yeah, the brief. The brief or the amendment? Yeah, the brief. In the text. I still don't know. So it says, alternate juror shall replace any juror who becomes unable to act or is disqualified. And so it doesn't provide a remedy, is I think. There's a bunch of dots in there, too. I don't know whether that's one sentence or the entire rule.  Where's the part about the mandatory mistrial? That does not appear in the rule. That was a gloss that the Iowa Court of Appeals on direct appeal put on the rule. Really, and again, in dicta, they didn't have to even state that because their decision turned on error preservation because the defense counsel had not preserved that error. Okay. If I could, I'd just like to turn to the prejudice analysis. So it is a little fuzzy, whether it's mandatory. Absolutely. And it's undisputed that there was no law on that question before the direct appeal dicta, right? I am not aware of any, and I don't think Petitioner has cited any either. So I think that's undisputed, yes. And so this pernicious neglect by everybody from the trial judge on down was all on an issue that was wide open. That's correct. That's the state's view of the status of the law, yes, Your Honor. Because if there had been a Supreme Court of Iowa decision to this effect, you'd think the trial court would have known. Right. That's right. Obviously, that deeply undermines the petitioner's claim for relief. And so if I could just turn to the prejudice analysis, I think our starting point for that analysis is that the United States Supreme Court has never defined strickland prejudice in the context of a motion for a mistrial. And so I think then the defendant can't argue that what the state courts did was contrary to United States Supreme Court precedent. They have to argue that the state courts unreasonably failed to extend United States Supreme Court precedent. And I'd just like to point out that even in that context, the Carter v. Chemnitz case from this circuit suggests that federal habeas relief is only warranted in the failure to extend context when what the state court did was objectively unreasonable. So when fair-minded jurists could disagree about the prejudice prong, then the petitioner can't show, can't satisfy AEDPA standards. And if I could, I would. My biggest problem still, though, is whether there was an informed strategic decision. And so they knew that they could move for a mistrial, decided not to, but they weren't aware that it would automatically be granted. Is that the size of it? That's all very true, and it's our position that they didn't subjectively have to know how Rule 2.18 worked because their objective decision was they didn't want a mistrial, whether the mistrial would be automatic or discretionary. And how do you know that? Because that question was not put to them. I guess at the very least, we can infer that based on their testimony about just generally they didn't want a mistrial, and then the petitioner hasn't satisfied a burden to show otherwise, that they would have asked for an automatic mistrial. Did the state argue the 11th Circuit Hammond case to the district court?  Why wouldn't the court have? Since the court ruled squarely to the contrary on both prongs of Strickland, why is... I didn't see it referenced in the court's opinion. I don't recall it being referenced in the district court's opinion either. But my recollection is that, and counsel can maybe correct me if I'm wrong. You addressed the question Judge Limbaugh raised, which I'm not sure what our court's rulings are, but it said under the law of this circuit, the question is not why Hammond's counsel failed to move for a mistrial, but whether a competent attorney reasonably could have decided not to move for one. Correct, and I think that... The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel. And in that case, counsel was in fact unaware of a legal argument that was available. That's right. I'm not sure that's 8th Circuit law, but... I don't believe the 8th Circuit has addressed this mistrial context either, but I do think... If we follow Hammond... Then the state prevails, and I think that... Hammond's even better on prejudice. Yeah, and Hammond jives, I think, with Wright v. Nix, which is the case we cited from this circuit, where it says that Strickland only asked the objective question of, quote, whether the law required an objection. It doesn't ask the subjective question of whether counsel knew the law. I see my time is up. Thank you for your time. Mr. Cole? May it please the court, my name is Rockin' Cole, and I represent the appellee Guillermo Escobedo. The state failed to appeal one of the most critical findings that the court made below, and that's at page 45 of his decision. Judge Bennett found that we had rebutted by clear and convincing evidence that this particular trial counsel knew the mistrial rule, so he held that they were ignorant of that particular rule. That drove the entire analysis... Not if Hammond's good law. Hammond's is not consistent, Your Honor, with Lasswell v. United States and Kimmelman v. Morrison because... It was decided much after that, much after Kimmelman. I don't know what the other case you're talking about. In what way is that inconsistent in terms of whether they're ignorant? Because it also comes down to, and this is something that Judge Bennett addressed in his brief, is in terms of his right to trial of 12 jurors. In Hammond, counsel did not know at that time that state law entitled him to a mistrial on request. Held irrelevant. Your Honor, in the Wiggins case and as well as the Kimmelman case... Wiggins was extensively discussed. It talks about the question of ignorance of the law. You'd also look at the Hinton case that we submitted in the 28J letter. I'm aware of no authority that the trial counsel can make reasonable decisions based upon total ignorance of the particular rule. I just read you one by a sister circuit. That sister circuit's... In a death penalty case. And that sister circuit's decision is not consistent with the United States Supreme Court case law. Well, that's your opinion, but it's obviously not theirs because they considered the Supreme Court authority that you're relying on. Well, the only thing I would say in this case, Your Honor, is that you were right in that particular case in the context of the day before they sought a mistrial. The next day they claimed they made a strategic decision, but it was based entirely on ignorance. They did not know the rule. No, it wasn't based entirely on ignorance. My goodness. It was, Your Honor, and I direct the Court's attention. You asked for a portion of the record that talked about trial courts or the trial counsel's ignorance. At page 483, Stephen Pals, it's a volume two, he's the one that actually did the direct appeal brief. And it was Mr. Pals who said that it was on appeal, that's when he discovered the rule based upon improper substitution. He didn't know the rule. And if you look at the actual record, it was quite clear that none of them knew the rule. Wait a minute. The rule as the appellate court found, interpreted, did not exist. It was not part of the law of Iowa. I don't think there's been any finding. If you look at the state court of appeals decision, first of all, this question of the state. And it just looked like, okay, we'll assume this. The issue, Your Honor, is that at no point did any of the court of appeals, the post-conviction court or the direct appeal court, ever make this reasonable mistake of law defense or base that in their particular decision. Instead, they basically made a finding based upon something that the individual attorneys were totally ignorant of. There's no duty to pursue an uncertain question. There's no strict duty. The entire premise of the district court's opinion is that this was plain on the face of the rule and longstanding Iowa law, and counsel blew it. Your Honor, I think what you're getting into is whether you as a federal court can interpret questions of state law. If you look how the court of appeals decided this case. For the first time. That ruling didn't exist at the trial. They did not indicate as a matter of state law that it was uncertain, that it was unclear. It doesn't matter. It does matter, Your Honor, because under Mulaney v. Wilbur and habeas court cases, you have to rely on state court adjudications of state court law. They cite the rule, and they said he would have been entitled to a mistrial. It's a question of state law to the extent that this court. Counsel does not under Strickland have to anticipate developments in the law, state or federal. I can't give you chapter and verse, but there are a lot of cases to that effect. The rule on its face doesn't have anything to do with mistrials. It doesn't say anything about mistrials. That was not. If you look at the actual post-conviction ruling, they did not. And they had an opportunity to make that decision, Your Honor, and say, well, look, we can justify this on the basis that it was a failure to predict a rule of law. There's no indication at the level of post-conviction appeal that it was uncertain, that it was unclear, that he couldn't have failed to predict, that it was a new rule of law. I would argue, Your Honor. But they knew at the least they had the option of moving for a mistrial. That's not what they said, Your Honor, in terms of on the basis of improper juror substitution. The individual fact that we found, and by the way, has not been appealed, that they were ignorant. We had rebutted as a factual matter. Including the trial court. What was that? Including the trial judge. The trial judge was ignorant as to that point of law, too. That happens all the time. And everybody in the courtroom. That's correct, Your Honor. And yet it was crystal clear, plain on the face of a rule that had never been interpreted. As a matter of state law, it was, Your Honor. No, not as a matter of after the fact state law. Not state law at the time. That makes all the difference in the world under Strickland. This is not a failure to predict a change in the law case. That's not a basis that the Court of Appeals made its argument on, Your Honor. Which Court of Appeals, when? The Iowa Post-Conviction Court of Appeals. You're looking at the reasonableness of their adjudication, Your Honor. They based upon a strategic decision. I'm reviewing our district court. Yes. We're reviewing our district court's decision. Yes. Our district court's decision was based upon what I consider a highly questionable assumption or assertion as to state law. Now, the fact that that was a preamble to then rejecting all the reasoning of the state court, that's not irrelevant. The linchpin of district court's decision was the fact that they were ignorant as to the improper substitution rule, and Judge Bennett, as a federal court, did absolutely the correct thing, which was he deferred to the state court adjudication of state law, and that as a matter of state law— Which was after the trial. That's not the correct thing. They cited— That's contrary to Strickland precedent. They cited state versus white in support of their particular position. Now, essentially, the state argues that the court of appeals erred in citing state versus white as precedent. You're into a question of whether the state court interpreted its own law. This court is not permitted under habeas. You keep saying that, and you're wrong. With respect to Strickland, the timing of the state law that evolved after counsel's actions in question is an entirely different proposition than the law that existed at the time of the action. You're talking about the text of the rule that existed previous to it, and it's quite clear that— Yeah, and from the text of the rule. It's not unclear, Your Honor. Well, it's clear to me the other way, that the only remedy is to replace the juror. There's no mention of mistrial here. Alternate jurors shall replace any juror who becomes unable to act or is disqualified before the jury retires, and if not so needed, shall then be discharged. And the error occurred at that particular point, and the attorney was not aware of even that rule that you're citing, Your Honor. So how could they have made a tactical justification based upon complete ignorance of a rule of law? Now, in terms of the remedy, you're never going to have a rule that says if you seek invocation of this rule, you're going to get a mistrial. Essentially what they're arguing is that the state court of appeals in citing state versus white was incorrect as a matter of state law. That's their central argument. No. It was clear on its face, Your Honor. That's not what I see as the relevant question. And by the way, though, the attorneys in terms of you do have to credit the attorney's analysis, they did not argue that, that in fact it was a new change in law, and I would encourage the state to find that in the record or cite it in post-hearing briefing. At no time. The question is if counsel had put that rule under the nose, so to speak, of the trial judge at that moment, what would have happened? He would have known the following, Your Honor, that prior to you can only, once they retire to deliberate, they may not be substituted. So at that point, the parties would have known at that precise moment. Where does it say that? It's in the text of the rule itself that it talks about prior to retiring. So it's an inference that says. It's an inference from, it's a negative pregnant or whatever. That has been interpreted by the state court. After the fact. They cite state versus white in support of its decision. If you look at the Court of Appeals decision in our case, they indicate and they cite in support of this state versus white. Now, again, the state argues that the state court of appeals in our case was incorrect in citing this 1972 case. But they do not treat it as a new question of law. They do not, and the attorneys didn't either. At the evidentiary hearing. Yeah, and at the evidentiary hearing, wasn't the evidence adduced from the two defense lawyers, whether to ask for a mistrial or whether instead to make a strategic decision to go on with the case because of the advantages that they gained because of the closing argument? That was directed to Herarte's attorney, Mr. Jones. And he in particular said, and this is at the post-conviction hearing, that he did not believe this particular rule was as strong as the grounds for mistrial that they had had before. So his feeling was, is if he lost the day before, he had no chance in this particular case. But the other part of it is, too, is that we're getting down to, and obviously the rule is central to this case, but throughout this case, Your Honor, in assessing the reasonableness of their actions, race was the entire issue in jury selection, during trial, during closing arguments. And then what essentially they discovered is, is that after the jury had been deliberating, essentially you had a person who admitted that indeed she was racist and that she harbored resentment against Hispanics. And so in terms, they had to recognize at that point that that was a significant error, and there was no time. This did not happen during trial. Obviously, I'm not expecting during trial, if there's a rule of evidence that you'd be able to set aside, that it was after deliberations had begun, there's no indication, and there was some total of their responses to the nature of this error was, um-hum, um-hum. There was no other indication. Now, the question of waiver is incredibly important. It's essential to the factual finding that Judge Bennett made. You can't waive and consult. But he essentially said that in a court of appeals decision that he acquiesced to the error. You can't consult, consent to that if the attorney himself is unaware that there's a violation of the rule itself. Your Honor, one of the basic principles of law is you can't have a rule without a remedy. Reading the text of the rule, he would have discovered that. And indeed he did when he looked it up. Mr. Pals, when he looked up the rule while he was preparing the appeal, realized that he had made a mistake. And at 483 of the trial transcript, or in the volume, he actually talks about that's when he discovered the rule. He didn't know that. We know all that. But it's central to the factual finding in this particular case. That he was ignorant at the time of this decision. Because they're saying tactical. Let me switch you quick to prejudice because it seems to me that the district court's definition of prejudice inquiry has got to be wrong. It's totally cont— But if it's not the inquiry the state proposes, why wouldn't it at least be, would counsel have moved for a mistrial if he knew the grant of mistrial would be automatic? Why isn't that the most favorable that you could possibly be entitled to under strict law? Yes. I mean, that's the precise question. Would have he asked for a mistrial? And it would have been granted. No, no, no. That's not what I— Okay. Do I have to say it again? Would counsel have moved for a mistrial if he knew it would be automatically granted? Yes. How do we know that? Because the data— The district court just said would it have been granted? Well— The district court had already answered that question, so the district court has no prejudice analysis whatsoever. Well, he did analyze prejudice. I think that the other part of it is— Because he posed the question as being answered by what he'd already said, which was in the deficient performance analysis. Okay. In terms of the deficient performance, it's not whether— I want to stay with prejudice. If counsel—would counsel, given his testimony as to his view of the state of, their view of the state of play after the trial judge's rebuke, and taking into account all of the alternatives, even with knowing—even having predicted where the court would go on direct appeal and interpreting rule, why would he have moved for a mistrial? Because if you look at— Just because it'd be granted? The day before when he asked for the mistrial, he actually told the court. At that point, no curative instruction could cure the prejudice on the basis of the prosecutor— Did he say that after the instruction the court gave? He said it before, but I think it's quite clear. Then he didn't preserve it. But the question is whether reasonable trial counsel—and that's the standard, is the objective test. Right. And would an objectively reasonable attorney, having failed the day before on a race-based case, the next day would objective counsel, when confronted with someone who admitted that they were racist against Hispanics, that they admitted that they lied to the attorneys? No, no. The court has said what it proposed to do.  And now—and counsel, according to its testimony, and I think the state courts and we owe deference, counsel has decided that a mistrial is not going to improve things. The next trial would not be better. He didn't know that there even could have been grounds for mistrial because he didn't know the rule. That's the linchpin of this case. He did not know the rule. It doesn't matter. It does matter, Your Honor. You've got to look at—you've got to know. I mean— If you look at Wiggins, deficient performance or strategic justifications flounders on the rocks of ignorance. No knowledge, no strategy. That's the linchpin of this case. That's an investigation into evidentiary matters. Wiggins, Wiggins. But, you know, why isn't the proper inquiry for prejudice if counsel— when the deficient performance that's been identified is ignorance of a procedural right, if you call it that, why isn't the proper prejudice inquiry— What would reasonable counsel have done if he'd known what he didn't know? He would have— As opposed to if he'd taken action, this would have— At the time, as opposed to—and I see I'm running out of time to answer the question. At the time of that particular decision, if reasonable counsel had known, he would have sought a mistrial. Well, you say that, but did you prove it? We did prove it, Your Honor. How? We proved it on the basis— Because, first of all, if the motion is made, it's not clear what other options the trial court might have. Did anybody explore that? No, and that was part of the deficient performance in this particular case. And the question is because he didn't know, you're getting into what an objectively reasonable counsel would have done because he didn't tender those reasons because he's ignorant of the rule. An objectively reasonable counsel, knowing of the rule and therefore—and having carefully thought out all of the things that might happen if he made the motion for mistrial. Yes. Would he have made it? Yes. The district court didn't answer that question. I thought they said he would as a matter of law, almost. Well, I think he did— The district court said there was prejudice because the motion, if made, would have been granted. That's correct. That's not the question. And that the lawyer should have made the motion. That's not their only question. As an objectively reasonable lawyer, he should have made the motion. That's the inquiry, Your Honor. As an objectively reasonable lawyer, he should have made the motion. And that's the standard of our district. I think why he didn't get into that, Your Honor, is because why get into this alternative hypothesis if he doesn't know the rule? The first thing the judge is going to say, with the hindsight of all of this litigation, is are you going to waive that? Yes.  This is the inquiry. Read the Hammond case. This is the kind of inquiry that you have to do to apply Strickland. Yes. Okay. The judge would have said, all right, are you going to waive it? That's correct. And now we come back to the essence of the state court findings, which is counsel thought this was as good as it gets. And so the answer would have been, subject to all this stuff about whether the defendant has a personal right to be involved, counsel would have said, I'm not going to make the motion. Because that decision was made, and he can't talk about waiver if he doesn't know. All right. Time's up. I mean, that's the case law. Nobody likes Strickland in its rigors. Mr. Parrott? Time has expired, Your Honor. Time has expired. I think the case has been very thoroughly briefed. And unusual, difficult question. We'll take it under writing.